D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
MATILDE MARTINEZ, as the Mother and Natural
Guardian of J.C., an infant,

                         Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, THE CITY OF NEW YORK, and
PRINCIPAL MAGALY MONCAYO,

                        Defendants.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-3152 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Matilde Martinez ("Martinez" or "Plaintiff") brings this action on behalf of her minor daughter, J.C., against the New York City Department of Education (the "DOE"), the City of New York (the "City"), and Magaly Moncayo, the principal of J.C.'s elementary school, alleging various common law, statutory, and constitutional violations. (Am. Compl. (Dkt. 11)). Plaintiff maintains that Defendants' actions taken in response both to an injury suffered by J.C. and to her ongoing, severe nut allergies have deprived J.C. of her constitutionally and statutorily protected right to a free appropriate public education and constitute negligence by all Defendants. (Id.)

Before the court is Defendants' motion to dismiss. (Defs. Mot. to Dismiss ("Mot.") (Dkt. 16); Defs. Mem. in Supp. of Mot. ("Mem.") (Dkt. 17).) For the following reasons, the motion is GRANTED.

I.     BACKGROUND

    A.     Facts

The court takes the following statement of facts largely from Plaintiff's amended complaint, the well-pleaded allegations of which the court generally accepts as true for purposes

1

of Defendants' motion to dismiss. N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

Plaintiff Matilde Martinez is the mother of J.C., a student at Public School 106 ("P.S. 106") in Brooklyn. (Am. Compl.) On September 29, 2016, while playing in the school gym, J.C.—then eight years old—fell and broke her foot. (Id. ¶ 13.) The gym does not have mats on the floor. (Id.) J.C. went to her gym teacher, Mr. Pagan, to inform him of her injury. (Id. ¶ 14.) He told her that she was "ok," and that she should "keep playing." (Id.) The teacher in J.C.'s next class noticed her limping and took her to Martinez, who is the coordinator of the P.S. 106 parent-teacher association. (Id. ¶ 16.) Martinez observed that J.C.'s foot was discolored and disfigured. (Id. ¶ 17.)

Later that day, Martinez confronted Mr. Pagan and asked why he had not taken J.C. to the nurse. (Id. ¶ 18.) Mr. Pagan responded that he had not done so because the injury was "nothing." (Id.) Martinez then took J.C. to the hospital where she was diagnosed with a broken foot, placed in a cast, and ordered by the doctor to stay home and off her foot until November 3, 2016. (Id. ¶ 19.) In the time that J.C. stayed at home, Martinez repeatedly requested home instruction from the school, but it was never provided. (Id. ¶ 20.)

After returning to school in November, Martinez requested that the school provide J.C. with a para-assistant "to help her with her personal needs including [by] assisting her in the restroom." (Id. ¶ 23.) The school assigned J.C. a male para-assistant, Albert. (Id.) Martinez found this inappropriate and, after the first day, prohibited Albert from assisting J.C. further. (Id. ¶ 24.)

In addition to the foot injury, J.C. has a nut allergy that causes hives, throat swelling, and potential death if she does not receive immediate treatment after exposure. (Id. ¶ 25.) Plaintiff

states that such a "potentially debilitating and serious" nut allergy requires J.C. to be closely monitored. (Id. ¶ 26.) Plaintiff complains that, rather than "accommodate J.C.'s disability," the school has continued to serve food with nuts and requested that J.C. begin class half an hour later than the other students, supposedly so as not to expose her to food containing nuts. (Id. ¶ 27.) Plaintiff further states that, upon information and belief, the school does not have any policies or procedures in place to prevent students or staff from bringing nuts to school. (Id. ¶ 28.) She also alleges that the school does not have any trained personnel or medication in the lunchroom to assist students with nut allergies in case they are exposed to nuts. (Id. ¶ 29.) Other alleged problems pertaining to the school's treatment of nut allergies include:

> (a) [S]erving foods containing nuts on school premises; (b) allowing students and staff to bring and consume foods containing nuts on school grounds; (c) no required training, or repeat training for staff at least every six months, on how to treat children with nut allergies who are exposed to nuts; (d) no medication stored in a secured area that is quickly accessible by trained staff; (e) no identification of students with nut allergies and having at least one trained staff with them at all times; and (f) no posting of warning signs in the school kitchen, classrooms, monthly menu, and attendance sheets alerting staff to students with nut allergies.

(Id. ¶ 51.) Plaintiff states that the requirement that J.C. start class later than the rest of the students "puts her at a terrible disadvantage academically and psychologically," and that J.C.'s grades and self-esteem have suffered as a result. (Id. ¶ 30.)

### B. Procedural History

Plaintiff filed her complaint on May 24, 2017. (Compl. (Dkt. 1).) On July 20, 2017, Defendants requested a pre-motion conference in anticipation of their motion to dismiss the case. (See Defs. July 20, 2017, Letter (Dkt. 9).) Two weeks later, Plaintiff notified the court of her intention to amend the complaint, and Defendants' consent thereto. (See Pl. Aug. 7, 2017, Letter (Dkt. 10).) On August 21, 2017, Plaintiff filed her amended complaint. (Am. Compl.)

Following Plaintiff's filing of the amended complaint, Defendants again requested a pre-motion conference in anticipation of their motion to dismiss the case. (See Defs. Sept. 5, 2017, Letter (Dkt. 12).) The court granted Defendants leave to move to dismiss the amended complaint. (Oct. 23, 2017, Min. Entry.) The fully briefed motion was filed on January 11, 2018, though Plaintiff filed her memorandum in opposition on December 29, 2017. (See Mot.; Mem.; Defs. Reply (Dkt. 18); see also Pl. Mem. in Opp'n to Mot. ("Pl. Opp'n") (Dkt. 15).)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

4

## III. DISCUSSION

Plaintiff claims that Defendants denied J.C. access to a free appropriate public education ("FAPE"), a right guaranteed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. ("Count Seven"). (Am. Compl. ¶¶ 67-69.) She also brings claims under Section 504 of the Rehabilitation Act of 1983 (the "Rehabilitation Act"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., alleging that Defendants denied J.C. a reasonable accommodation for her claimed disabilities ("Count Eight" and "Count Nine," respectively). (Am. Compl. ¶¶ 70-76.) She further asserts three claims under 42 U.S.C. § 1983: one arguing that Defendants are municipally liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for "fail[ing] to institute the proper policies and procedures to address any accidental exposure to foods containing nuts" ("Count Four"); one arguing that J.C.'s FAPE denial deprived her of her due process rights under the Fourteenth Amendment to the United States Constitution ("Count Five"); and one arguing that J.C.'s due process was denied by Defendants' failure to address her serious medical needs in the context of her broken foot ("Count Six"). (Am. Compl. ¶¶ 47-66.) Finally, she brings a variety of common-law claims, including negligent supervision, negligent performance of a governmental function, and negligent hiring and retention ("Count One," "Count Two," and "Count Three," respectively). (Id. ¶¶ 31-46.)

For the following reasons, the court grants Defendants' motion to dismiss all counts in the amended complaint.

### A. Statutory Background

"The IDEA requires States receiving federal funds to provide 'all children with disabilities' with a FAPE." Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 741 (2d Cir. 2018)

5

(quoting 20 U.S.C. § 1412(a)(1)(A)), petition for cert. filed, No. 17-1699 (U.S. June 21, 2018). "A FAPE must provide 'special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits.'" Id. (internal citations and quotation marks omitted) (quoting Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998)). "A State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's] individualized education program,' or IEP." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 994 (2017) (alteration in original) (quoting 20 U.S.C. § 1401(9)(D)).

The "reach and requirements" of both the Rehabilitation Act and Title II of the ADA "are precisely the same." Weixel v. Bd. of Educ., 287 F.3d 138, 146 n.6 (2d Cir. 2002). To establish a violation of either law, a plaintiff must demonstrate: "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 187 (2d Cir. 2015) (internal quotation marks omitted). "Under both statutes, schools are required to provide 'a free appropriate public education' through special education and related services." Scaggs v. N.Y. Dep't of Educ., No. 06-CV-799 (JFB), 2007 WL 1456221, at *15 (E.D.N.Y. May 15, 2007) (citing 28 C.F.R. § 35.103, and 34 C.F.R. § 104.33).

### B. The IDEA's Exhaustion Requirement

#### 1. Overview

Under the IDEA, parents of disabled children are guaranteed "a variety of procedural safeguards," Mr. P, 885 F.3d at 741, including the right "to request a due process hearing in

order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)). These administrative proceedings are determined by and conducted pursuant to the laws of each state. See § 1415(f)(1)(A), (g). "New York has opted for a two-tier administrative system" for review of IEPs:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

Cave, 514 F.3d at 245. "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." Id. (citing § 1415(i)(2)(A)).[1]

The exhaustion requirement applies to all suits that "seek relief for the denial of a FAPE," regardless of whether the suit was brought under the IDEA or "similar laws," including the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 752 (2017); see 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f)

---

[1] Over the past decade, there has been some discussion in this circuit as to whether the exhaustion requirement is a jurisdictional prerequisite, as the Second Circuit has long held; or whether it is a waivable claims-processing rule. See Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203-04 (2d Cir. 2007) (citing Eberhart v. United States, 546 U.S. 12, 16 (2005) (per curiam), and Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). Despite the uncertainty on this topic, the Second Circuit has refused to upset its precedent classifying the exhaustion requirement as an element of the court's subject-matter jurisdiction. See Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 133 n.3 (2d Cir. 2012) (summary order). "In any event, where, as here, there is no question that [D]efendants have properly raised the exhaustion argument, the distinction is immaterial." M.A. v. N.Y. Dep't of Educ., 1 F. Supp. 3d 125, 143 n.10 (S.D.N.Y. 2014) (citing Baldessarre, 496 F. App'x at 133 n.3, and Coleman, 503 F.3d at 204).

and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]."). "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." Fry, 137 S. Ct. at 752. "[I]f, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." Id. at 754; see L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (summary order) ("[I]f the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required . . . ." (quoting Polera v. Bd. of Educ., 288 F.3d 478, 481, 487-88 (2d Cir. 2002))).

"[T]he exhaustion requirement does not apply 'in situations in which exhaustion would be futile.'" Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007) (quoting Polera, 288 F.3d at 488). "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." Id. (internal quotation marks omitted). Futility may exist where the case involves "systemic violations that could not be remedied by local or administrative agencies." Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 134 (2d Cir. 2012) (summary order) (quoting Cave, 514 F.3d at 249); accord J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 113 (2d Cir. 2004). "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies[,] and procedures, they generally do not have the authority to set new policies or to alter existing ones." King v. Pine Plains Cent. Sch. Dist., 918 F. Supp. 772, 781 (S.D.N.Y. 1996). While claims of systemic violations are often asserted as part of a class action, they "can be made at the individual level, provided 'a systemic policy is at stake' and 'the administrative officer has no power to correct the violation.'" J.Z. v.

8

N.Y.C. Dep't of Educ., 281 F. Supp. 3d 352, 362 (S.D.N.Y. 2017) (quoting F.C. v. N.Y.C. Dep't of Educ., No. 15-CV-6045 (PAE), 2016 WL 8716232, at *8 (S.D.N.Y. Aug. 5, 2016)). "The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement." Coleman, 503 F.3d at 205.

Exhaustion may also be excused where "the parents have not been notified that [administrative] remedies were available to them." Weixel, 287 F.3d at 149; see Dervishi ex rel. T.D. v. Stamford Bd. of Educ., 691 F. App'x 651, 652 (2d Cir. 2016) (summary order) ("[E]xhaustion is excused if the defendant failed to notify the plaintiff of her procedural rights under the IDEA.").

2. Application

Defendants argue that all of Plaintiff's federal claims should be dismissed because of Plaintiff's failure to exhaust the IDEA's administrative procedures. (Mem. at 12.) In response, Plaintiff does not claim that she has exhausted her administrative remedies. Instead, she states that her failure to exhaust should be excused because "her claims stem from Defendants' systemic flaws[,] including . . . lack of staff training, lack of accessible medication, no policy for student[s] and staff on consuming foods containing nuts on school grounds, [and] lack of procedures to identify, locate, and evaluate children with her disability." (Pl. Opp'n at 10-11.) She also says that the exhaustion requirement should be waived because of Defendants' alleged failure to comply with the notice requirement. (Id. at 11.) The court holds that all of Plaintiff's federal claims—except for Count Six—are barred by the exhaustion requirement.

   a. *Applicability of the Exhaustion Requirement*

As set forth above, Plaintiff claims that Defendants have violated the IDEA by failing to provide J.C. with a FAPE. (Am. Compl. ¶ 68.) This assertion also explicitly forms the basis of

9

Counts Four and Five (see id. ¶¶ 49, 58), as well as her Rehabilitation Act and ADA claims (see id. ¶¶ 71, 75). All of these claims clearly fall within the exhaustion requirement.

By their text, these claims seek redress for denial of a FAPE to J.C. This factor, while not dispositive, is important in determining whether a complaint seeks relief for denial of a FAPE. See Fry, 137 S. Ct. at 754 ("[The] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education."); see also A.P. ex rel. Porco v. Lewis Palmer Sch. Dist. No. 38, 728 F. App'x 835, 839 n.1 (10th Cir. 2018) (citing Fry, 137 S. Ct. at 750-51) (applying the exhaustion requirement to allegations that the defendant school district denied the plaintiff a FAPE and "denied [the plaintiff] the benefits of [the School District's] educational services solely because of [the plaintiff's] disability").

Even beyond the text, though, it is clear that these claims turn on whether J.C. was denied a FAPE, thereby subjecting them to the exhaustion requirement. Fry suggests that courts ask a pair of questions in order to determine whether the "gravamen" of a plaintiff's complaint concerns the denial of a FAPE:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?

137 S. Ct. at 756. If the answer to both of these questions is no, the complaint is likely about the denial of a FAPE. Id. In the instant case, the answer to both questions is indeed no. As to the first question, the right that Defendants are said to have violated is specifically based on J.C.'s status as a student to whom special-education services are owed. As to the second question, the DOE does not have an obligation to provide special-education services to adult employees or visitors—just students. Based on these factors, it is clear that "[t]he act at the center of Plaintiff's complaint is the denial of educational services to a student with a claimed disability."

10

See A.M. ex rel. Mixon v. Fresno Unified Sch. Dist., No. 16-CV-725, 2017 WL 6209389, at *9 (E.D. Cal. Dec. 8, 2017).[2]

Because all of Plaintiff's federal-law claims except for Count Six "seek[] redress for [the] school's failure to provide a FAPE," the court must dismiss these claims unless Plaintiff can show that the exhaustion requirement is, for some reason, excused. See Fry, 137 S. Ct. at 755.

### b. Exceptions to the Exhaustion Requirement

Plaintiff contends that her failure to exhaust administrative remedies should be excused because her complaint alleges various "systemic" flaws such that exhaustion would have been futile. She also claims that Defendants did not send her mandatory notice of her administrative remedies. The court rejects both of these arguments.

#### i. Futility

As set forth above, complaints alleging "systemic violations" are exempt from the exhaustion requirement under the futility exception. J.S., 386 F.3d at 113. "The systemic violations exception applies where a plaintiff challenges the framework and procedures for assessing and placing students in appropriate educational programs or where the nature and volume of complaints are incapable of correction by the administrative hearing process." Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ., 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010) (alterations adopted) (internal quotation marks omitted) (citing J.S., 386 F.3d at 114). Exhaustion may also be excused under the "same rationale where an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." M.G. v. N.Y.C. Dep't

---

[2] The inclusion of monetary damages among Plaintiff's requested relief does not alter the calculus. See Polera, 288 F.3d at 487 ("Courts in the Second Circuit have . . . not permitted [plaintiffs] to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages."); see also Fry, 137 S. Ct. at 752 n.4 ("[W]e leave for another day a further question about the meaning of § 1415(*l*): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—here, money damages for emotional distress—is not one that an IDEA hearing officer may award?").

11

of Educ., 15 F. Supp. 3d 296, 303 (S.D.N.Y. 2014) (internal quotation marks omitted); see Weixel, 287 F.3d at 149. In any case, "the conduct alleged to have violated [the] IDEA [must have] affected all students in a given program." Kallopie R., 827 F. Supp. 2d at 139.³

In Count Five, Plaintiff alleges that Defendants failed to remedy several "systemic flaws" that constitute a "pattern and practice of serving food containing nuts throughout the school system." (Am. Compl. ¶ 49; see id. ¶¶ 49-52.) Plaintiff submits that, through these actions, Defendants have "exhibit[ed] a reckless indifference to J.C.'s rights under the law, and children like her," and prevented J.C. and children with nut allergies "from benefitting equally from a FAPE." (Id. ¶¶ 49, 52.) These alleged systemic flaws are, she claims, "policy deficiencies" that an individual hearing officer would have no authority to address, and so she argues that all of her claims against Defendants should be exempt from the exhaustion requirement. (See Pl. Opp'n at 10-11.)

Plaintiff has not sufficiently alleged that Defendants' complained-of behavior amounts to a policy or practice of general applicability which a hearing officer would be unable to address. For this inquiry, an analogy to liability under Monell, 436 U.S. 658, is instructive. Under Monell, a municipality—including a municipal agency—may be held liable for an official policy that causes the plaintiff to be subjected to the denial of a constitutional right. Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff may plead the existence of an official policy by alleging (1) a formal policy; (2) actions taken by final municipal policymakers; (3) a practice so persistent and widespread that it implies the constructive knowledge of policymakers; or (4) a failure to train or supervise municipal employees amounting to deliberate indifference to

---

³ Futility may also be shown where "defendants 'failed to implement services that were specified or otherwise stated in an IEP.'" Kalliope R., 827 F. Supp. 2d at 138 (quoting Polera, 288 F.3d at 489). Because Plaintiff does not argue that her claim meets this basis for futility, the court deals only with the systemic-violations exception.

the rights of those whom the employees will come into contact. E.g., Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Plaintiff has not alleged the existence of a municipal policy that a hearing officer would be without authority to alter. First, while she seems to be alleging the existence of a formal policy, neither her complaint nor her opposition brief points to statutory or regulatory authority pursuant to which the City and the DOE instituted the challenged "flaws." See, e.g., Heldman ex rel. T.H. v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992) (holding that an administrative hearing officer lacks authority to grant a plaintiff's requested relief where the plaintiff essentially seeks modification of a statute or its implementing regulations); Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236, 245 (S.D.N.Y. 2000) (same). Plaintiff also has not alleged that final municipal policymakers instituted these "flaws" or that the DOE or the City failed to train its employees such that the municipality was deliberately indifferent to J.C.'s rights. Finally, the policies alleged in Plaintiff's complaint are limited to P.S. 106.; there is no allegation that these "flaws" extended to other DOE schools or that they persisted across a number of years or in the face of complaints. In short, Plaintiff's briefing on whether these "systemic flaws" constitute an official policy boils down to an ipse dixit statement that because she has alleged the existence of these "systemic flaws," she has properly alleged a municipal policy. (See Pl. Opp'n at 6.) This is insufficient. Without more concrete allegations as to the existence of an official policy instituted by Defendants regarding treatment of nut allergies, Plaintiff cannot claim that an individual hearing officer would have been unable to remedy her alleged harms.

Even if a plaintiff cannot show that the student's deprivation of rights was undertaken pursuant to an official policy, the exhaustion requirement may still be excused where the totality of the complaints is so voluminous that administrative remedies would be futile. See Kalliope

R., 827 F. Supp. 2d at 138. Where the adequacy of multiple plaintiffs' IEPs is at issue, exhaustion is futile because the relevant government decisionmaker may not be able to process all possible claims with sufficient speed or adequacy. See Jose P. v. Ambach, 669 F.2d 865, 869 (2d Cir. 1982). Where, however, the adequacy of only one plaintiff's IEP is at issue, these concerns dissipate.[4] So while a plaintiff need not bring this type of claim as part of a class action, see J.Z., 281 F. Supp. 3d at 362, she must still allege systemic harm that is "inherent in the program for the education of [disabled] children . . . and is not directed against any specific child." J.G. ex rel. Mrs. G. v. Bd. of Educ., 830 F.2d 444, 446 (2d Cir. 1987). For example, in Scaggs, the district court found that exhaustion would be futile because of the class plaintiffs' "broad allegations of failure on the part of [the] defendants to evaluate, implement, and monitor necessary services for disabled students." 2007 WL 1456221, at *7. The plaintiffs did not claim that one student's IEP was not being followed; rather, they alleged that the school was not complying with the IEPs for a class of disabled students or "provid[ing] such plans to students who needed them." Id. Similar "[d]istrict-wide systemic failures in identifying and evaluating students with disabilities and in delivering special education and related services to those students" have been found to fall within the futility exception in other cases. See M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist., No. 13-CV-3596 (VB), 2014 WL 901578, at *6 (S.D.N.Y. Mar. 3, 2014); see also J.S., 386 F.3d at 115 (affirming denial of motion to dismiss where "the complaint [did] not challenge the content of [IEPs], but rather the School District's total failure to prepare and implement [IEPs]"); Kalliope R., 827 F. Supp. 2d at 139 ("In this case, plaintiffs are not challenging the adequacy of a particular IEP or IEPs. Instead, they allege

---

[4] An individual allegation of "systemic violations of the procedural rights accorded by IDEA" may also trigger the futility exception. See Heldman, 962 F.2d at 158-59 (emphasis added). In this case, however, Plaintiff alleges that systemic harms amounted to a violation of J.C.'s substantive rights under the IDEA, not that the procedure for remedying such harms was systemically infirm.

14

that [the New York State Department of Education] has adopted a policy that violates IDEA by circumventing the development process.").

Plaintiff's complaint does not allege systemic harms sufficient to overcome the exhaustion requirement. This conclusion follows clearly from her claims under the IDEA, the ADA, and the Rehabilitation Act, as well as her § 1983 claim alleging a violation of J.C.'s due-process entitlement to receive a FAPE, all of which allege that Defendants "have denied and continue to deny a FAPE to [J.C.]." (Am. Compl. ¶ 68; see id. ¶¶ 55, 71, 75; see also Pl. Opp'n at 8-10 (discussing how the denial of a FAPE to J.C. supports liability under the IDEA).) These claims allege harm particular to J.C., not to disabled children in general, and so they cannot survive the exhaustion requirement. The same analysis applies to Plaintiff's claim of municipal liability, even though she alleges, as discussed above, "systemic flaws" that allegedly affect J.C. and "children with nut allergies." (See Am. Compl. ¶ 49.) That Plaintiff mentions other "children with nut allergies" in her cause of action is immaterial because, as she is not asserting claims on behalf of those children, her case does not at all depend on whether they were denied a FAPE. For example, if the court were to find that Defendants' behavior did serve to deny other children a FAPE, but that J.C. herself was not denied a FAPE, Plaintiff would have no case. See Schultz v. Incorporated Village of Bellport, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . , his . . . Monell claim necessarily fail[s] as well." (footnote omitted)). Without multiple students' IEPs at issue, Plaintiff's complaint still alleges harm essentially "directed at [one] individual child," J.S., 386 F.3d at 113, and her failure to exhaust administrative remedies cannot be excused.

15

Because Plaintiff argues only that J.C. was denied a FAPE, and does not allege wrongdoing extending beyond Defendants' obligations to J.C., it would not have been futile for Plaintiff to exhaust her administrative remedies before bringing these claims. Cf. J.S., 386 F.3d at 113 (finding that allegations of systemic violations will entitle a plaintiff to exemption from the exhaustion requirement where the complaint alleges "wrongdoing that is inherent in the program itself and not directed at any individual child"); O.M. ex rel. D.M. v. Bd. of Educ., No. 14-CV-6487, 2015 WL 3952601, at *6 (W.D.N.Y. June 29, 2015) (rejecting a claim of futility where "the complaint's substantive allegations illustrate that [the plaintiffs'] claims are focused on the District's alleged failures in regard to [a student] individually as opposed to systemic failures affecting other disabled students in the District").

ii. Notice

Additionally, the court does not agree that Plaintiff's failure to adhere to the exhaustion requirement should be excused because of any alleged failure to provide her with notice. Specifically, Plaintiff faults Defendants for failing to provide her with notice "in her native language, Spanish." (Pl. Opp'n at 11.) Defendants, in response, note that Plaintiff's amended complaint is devoid of any such allegation. (See Defs. Reply at 8.) Ordinarily, a plaintiff who fails to plead facts—even if asserted in response to a motion to dismiss—relevant to excusal from the exhaustion requirement cannot subsequently claim that her failure to exhaust should be excused. See Tryon v. E. Islip Union Free Sch. Dist., No. 15-CV-1534 (JS), 2015 WL 7312910, at *7 (E.D.N.Y. Nov. 19, 2015); see also Keitt v. New York City, 882 F. Supp. 2d 412, 424 n.2 (S.D.N.Y. 2011) (considering "factual allegations made in the plaintiff's opposition memorandum" only because the plaintiff was pro se). That is the case here. Without sufficient pleading, the court is unable to address whether Defendants' alleged failure to provide Plaintiff

with notice in Spanish of her administrative remedies is grounds for finding that the exhaustion requirement should be excused.

* * *

Because Plaintiff did not exhaust her administrative remedies, and because no exception to the exhaustion requirement applies, the court dismisses Counts Four, Five, Seven, Eight, and Nine without prejudice.

### C. Failure to Address Serious Medical Needs

Plaintiff's remaining federal claim relates not to J.C.'s nut allergy, but to her foot injury. Here, Plaintiff seems to be claiming that Defendants should be held liable for Mr. Pagan's failure to take J.C. to the nurse or call an ambulance immediately after the injury. (See Pl. Opp'n at 7.) Plaintiff alleges that Defendants' liability attaches because of the "special custodial relationship" they share with J.C., and that their accordant deliberate indifference to her medical needs violated her rights under the Fourteenth Amendment. (See Am. Compl. ¶¶ 62-65.) This claim is not subject to the exhaustion requirement, as it does not seek redress for the denial of rights owed to J.C. pursuant to the IDEA. Nevertheless, the court grants Defendants' motion to dismiss this claim.

Courts recognize that individuals have a "substantive due process right to bodily integrity." Chambers v. N. Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 762 (S.D.N.Y. 2011) (citing, inter alia, Lombardi v. Whitman, 485 F.3d 73, 78-79 (2d Cir. 2007)). "That right, however, is intended to prevent the government 'from abusing [its] power, or employing it as an instrument of oppression.'" Campbell v. Brentwood Union Free Sch. Dist, 904 F. Supp. 2d 275, 280 (E.D.N.Y. 2012) (alteration in original) (quoting Deshaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989)). So while the general rule is that "nothing in the Constitution

requires the State 'to protect the life, liberty, and property of its citizens against invasion by private actors,'" id. (quoting Deshaney, 489 U.S. at 195), there are "two narrow exceptions." Urbina v. City of New York, 672 F. App'x 52, 55 (2d Cir. 2016) (summary order). "First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim." Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008). And "[s]econd, the state may owe such an obligation if its agents 'in some way had assisted in creating or increasing the danger to the victim.'" Id. (quoting Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993)).[5]

Accordingly, in order to hold the City, the DOE, and the principal of J.C.'s school liable for Mr. Pagan's failure to seek immediate medical attention for J.C.'s foot injury, the court must hold that these defendants were in a special relationship with J.C. As Defendants point out, however, "numerous courts have held that the special relationship doctrine is inapplicable in the context of public school students." (Mem. at 7.) See Campbell, 904 F. Supp. 2d at 280 ("[C]ourts are generally in agreement that the 'special relationship' doctrine does not apply to a school setting."); see also Chambers, 815 F. Supp. 2d at 764 n.10 (collecting cases). Instead, the special relationship doctrine is reserved for situations in which the victim can be said to have been within the involuntary custody of the supposed state actor. See Matican, 524 F.3d at 156 (stating that "involuntary custody" is "the linchpin of any special relationship exception"). Plaintiff clumsily attempts to analogize J.C.'s situation to that of "a prisoner, or disabled patient" in that J.C. is "totally controlled and dependent on Defendants while she is in school" (Pl. Opp'n at 7), but this comparison is inapt and its conclusion untrue. As one court has explained:

> [W]hile school attendance is compulsory, the parent ultimately determines the type of education his or her child will receive (private, public, home school), and while schools impose certain

---

[5] Plaintiff does not claim that this basis for due-process liability is relevant to this case. (See Pl. Opp'n at 6-8.)

> rules and restrictions on students, they do not limit an individual's freedom to act in the same manner as involuntary confinement by the state in a state prison or mental institution.

P.W. v. Fairport Cent. Sch. Dist., 927 F. Supp. 2d 76, 82 (W.D.N.Y. 2013). J.C. is not being held in school "against [her] will" to the degree necessary to support Fourteenth Amendment liability, no matter how little she actually wants to be at school. See Matican, 524 F.3d at 156 (quoting Deshaney, 489 U.S. at 200). Unlike incarcerated prisoners or involuntarily committed mental patients, J.C. has the right to return to her home at the end of the school day, as well as a good deal of additional freedoms while she is at school. Compare, e.g., Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 374-75 (2009) (recognizing that public-school students generally have a reasonable expectation of privacy in their own bodies), with Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992) ("[I]nmates do retain a limited right to bodily privacy."). Plaintiff's citation to the doctrine of in loco parentis is likewise inapposite; the fact that teachers and school administrators are responsible for a student during the school day does not create a special relationship between them and the student. See Doe v. Orange-Ulster Bd. of Coop. Educ. Servs., No. 96-CV-695 (MDF), 1999 WL 34807339, at *6 n.7 (S.D.N.Y. Mar. 26, 1999). That this doctrine exists at common law is not relevant to the question of whether J.C.'s substantive rights under the Due Process Clause of the Fourteenth Amendment were violated.

Because Plaintiff cannot show that Defendants were in a special relationship with J.C. such that substantive due process liability can attach, the court dismisses Count Six with prejudice, as leave to amend would be futile.

### D. Supplemental Jurisdiction

Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims. 28 U.S.C. § 1367(c)(3). "[W]here, as here, the federal claims are eliminated in the early stages of

litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any potential state-law negligence claims, including Counts One, Two, and Three. (See Am. Compl. ¶¶ 31-46.)

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 16) is GRANTED. Counts One, Two, Three, Four, Five, Seven, Eight, and Nine are DISMISSED WITHOUT PREJUDICE. Count Six is DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully DIRECTED to enter judgment for Defendants and close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 23, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge